[Cite as *State v. Bennett*, 2024-Ohio-4557.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,           : CASE NO. 23CA4

    v.                            :

DAVID M. BENNETT,                       : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.          :

_____

APPEARANCES:

Steven H. Eckstein, Washington Courthouse, Ohio, for appellant[1].

Brigham Anderson, Lawrence County Prosecuting Attorney, and Steven K. Nord, Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:9-10-24
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence. David Bennett, defendant below and appellant herein, assigns two errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S POST-JUDGMENT MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29(C)."

_____

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ABUSED ITS DISCRETION IN
DENYING THE DEFENDANT-APPELLANT'S MOTION FOR
NEW TRIAL."

{¶2} In April 2022, a Lawrence County Grand Jury returned an indictment that charged appellant with (1) one count of burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, (2) one count of receiving stolen property (to wit: a red Honda four-wheeler, a green Honda four-wheeler, and a camouflage Polaris side-by-side) in violation of R.C. 2913.51(A), a fourth-degree felony, and (3) one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A)(C)(1)(a), a fifth-degree felony.  Appellant entered not guilty pleas.

{¶3} At trial, Lawrence County Sheriff's Deputy Shannon Lee Orsbon testified that on April 8, 2022 at approximately 4:00 p.m., he responded to a burglary call.  After he met property owner Drew Williamson and his neighbor, Williamson stated that someone kicked in his garage door and "it looked like somebody's been inside the home."  Orsbon checked two houses on the property, a newer home and an older farmhouse and observed a pried open garage door and door from the garage to the home.  Inside the home, Orsbon noticed "drawers emptied out on the floor, stuff moved and rearranged throughout the garage," the couch shoved over, "drugs on the floor, cabinets were opened, dresser doors [sic.] were flipped out and dumped upside down."  Orsbon also observed cabinets open with "no

dishes * * * nothing inside the cabinets."  In the bedroom, Orsbon found "a lot of things that looked completely out of place and it looked like a bunch of stuff missing."  Orsbon photographed the home and garage, including muddy footprints outside and throughout the house.

{¶4}  Deputy Orsbon testified that because Drew Williamson's daughter, Debbie Wise, and her family visit the property every weekend, they noticed the missing items.  Orsbon took statements from Williamson and Wise.  From the home, missing items included a bow, hunting and fishing gear, a .22 rifle, trail cameras, toiletries, and clothing.  From the garage, Williamson and Wise identified missing four-wheelers, a side-by-side, and a lawnmower. Orsbon also walked across the road to the farmhouse and found "the side door pried open."  Orsbon walked through the farmhouse with Williamson and Wise and inventoried pictures missing from the wall, a missing wood burning stove, overturned beds, and several items out of place.

{¶5}  When Deputy Orsbon interviewed neighbors, they "reported that they had seen a vehicle there earlier.  They did not obtain a license plate, but said the vehicle had spray-painted on the back that said 'Parts' on it."  The neighbors also noticed "a few subjects there, but they did not recognize them."

{¶6}  Drew Williamson owns the 142-acre property, which includes a newer home and the 1812 farmhouse.  He, his three adult

daughters and their families use the property as a "getaway" to hunt and fish. His middle daughter, Debbie Wise, purchased an adjoining 80- acre farm.

{¶7} In April 2022, Williamson discovered that someone had broken into both homes. He found in the main home three doors "busted" and noted missing items, including cooking utensils, clothing, a vacuum, groceries, two crossbows, 15 trail cameras, tools, an air compressor, a generator, ammunition, a gun, a side-by-side, four-wheelers, and all of the keys in his garage. In the old farmhouse, Williamson discovered two doors "busted," and a missing spotting scope, binoculars, range finder, and tripod. The washer and dryer had been "pulled out by the double doors." Williamson found all the dishes, silverware, and cookware in totes, but "we come in before they had a chance to come back and get it." In addition, someone "took a hacksaw and sawed my pump out of the well house."

{¶8} Debbie Wise owns contiguous property to her father's farm and explained that their family and friends use the property to hunt, fish, and hold family gatherings. In early April, one of her father's neighbors called to tell her that the property had been burglarized and described Wise's father as "shaken." Wise visited the farm and found the house "demolished inside." Wise observed missing linens, the opened crawl space and the attic ladder, and explained, "[t]hey had even fixed themselves something to eat."

The burglars also "ransacked" the old farmhouse, tore the heaters off the walls, and cut gas lines.  Wise found some items "stacked up and ready to go.  Had the back doors still open. * * * They had taken all of the bedspreads, pillows, had everything bagged up and in totes that we had out there.  And so we knew that they were coming back to get all of that."

{¶9}  Debbie Wise testified that missing items included four-wheelers, a side-by-side, several tools, ammunition, and about 15 trail cameras, each with SD cards.  Wise said that when the break-in occurred, the trail cameras were in the house to receive fresh batteries.  Wise felt thankful because her father had not been at the farm at the time of the burglaries "because if my dad would have been out there staying, he wouldn't have been able to defend himself."  Subsequently, Wise created a Facebook post and became inundated "with countless people" who identified the perpetrators.  Wise said people shared the Facebook post over 600 times and "at least 15 confirmed three people that did it."  Wise and her father received a few returned items, such as keys, a jacket, a toolbox, binoculars, and two spotting scopes.

{¶10} On April 12, 2022, loggers Patrick Malone and Ben Curry visited Homer Jenkins' property to timber.  Malone and Curry observed a white truck in the Jenkins' barn with "a hodgepodge" of items in the back that included a crossbow, "clothes and just a bunch of different stuff."  Malone also observed a four-wheeler in

the barn and a side-by-side outside the barn.  In addition to Jenkins and Curry, Malone observed Greg Cox and appellant on the Jenkins property and noticed Cox and appellant drive away in the side-by-side with Cox driving.  Malone did not see appellant's truck.

{¶11} Ben Curry testified that when he and Malone visited Homer Jenkins' property in April 2022, they noticed a white pickup truck and, sitting behind the truck in the barn, four Honda FourTrax four-wheelers, two red, one green.  However, Curry could not recall the color of the other four-wheeler.  Curry also noticed the red four-wheeler ignition "was ripped out.  All you could see was the wires."  In the cab of the white truck, Curry noticed "all kinds of like clothes * * * if I remember right there was a bow, like a compound bow.  Just * * * an assortment of stuff."  Curry stated that the day before, "there wasn't nothing in there [the barn]."  Curry spoke briefly with appellant and then observed appellant climb on the side-by-side.

{¶12} Ben Curry loaded up and left the Jenkins property for the day, but returned around 9:00 p.m. because "[w]e had found out that this happened.  And I went back and got my tractor."  Curry spoke with Debbie Wise because "[s]he had put a post on Facebook, which is how I found out the first time what was starting to go down."  Curry also observed Facebook photos of the four-wheelers and side-

by-side, and he "reached out to her through her post and I said, I think I saw your stuff."

{¶13} Homer Jenkins testified that he owns Green Dragon Farm, about two miles from Drew Williamson's property. Jenkins has known appellant for about four years because appellant is his niece's boyfriend and they lived with Jenkins until shortly before this incident. Appellant also worked on Jenkins' vehicles and Jenkins knows Greg Cox from trading parts. Jenkins acknowledged that he is currently serving a prison sentence for a crime that involved Drew Williamson and property stolen from his farm, and records show that Jenkins pled guilty to burglary and receiving stolen property. Jenkins, however, testified that he thought he served prison time for "cutting that ankle monitor off." Jenkins claimed he is in prison "for something I didn't do. That's what my lawyer wanted me to do, so, yeah, I listened to just doing what my lawyer said to do. So that's what I done."

{¶14} Homer Jenkins further testified that in early April 2022, Greg Cox[2] stopped at daylight and asked Jenkins to give him a ride to his vehicle. After Cox parked a four-wheeler behind Jenkins'

---

[2] Greg Cox did not testify at appellant's trial. It appears that the trial court sentenced Cox on March 31, 2023 for his involvement in this incident. See *State v. Cox*, Case No. 22CR109, convicted of burglary, receiving stolen property, aggravated possession of drugs and failure to appear.

barn, Jenkins drove Cox to the Williamson farm.  Cox told Jenkins that he planned to return to Jenkins' farm and load the four-wheeler into his truck.  Jenkins testified that when he dropped off Cox at the Williamson farm, he noticed appellant "standing in the road waiting for [Cox]."  Jenkins said, "I knew it wasn't right. [Cox's] truck was parked back behind - kind of behind their house, and I let him out, and I left."  Jenkins added that he "knew [Cox] didn't know those people."  As he left, Jenkins saw appellant and Cox walk together toward the Williamson house.

{¶15} Jenkins stated that a couple of hours later Greg Cox stopped at Jenkins' home driving a tarped white truck and pulling a tarped trailer.  Jenkins told Cox to "get whatever he had down there off my property."  Jenkins explained that he referred to "a couple four-wheelers * * * they had them inside my barn."  Jenkins said that appellant's red Ford Ranger truck was at Jenkins' farm because it "had broken down there," and Jenkins helped appellant repair it later that evening.  At some point, Jenkins, appellant and Cox got into Cox's white pickup truck and drove around Jenkins' property to look for a four-wheeler that did not belong to Jenkins. Although they did not find the four-wheeler, Jenkins said four-wheeler tracks "came out of my barn," but again he did not own a four-wheeler.  Cox also gave Jenkins "an old shotgun that was junk" and "needed repaired."  Jenkins later learned that the white truck Cox claimed to own had been stolen.

{¶16} Lawrence County Sheriff's Detective Aaron Bollinger investigated the Williamson property burglary along with Detective Brad Lehman. They met Drew Williamson and Debbie Wise at the property and Bollinger photographed the homes and garage, and collected evidence including swabs from handles and other items that might contain DNA. BCI tested a paper towel and a wrapper, both from the kitchen counter, with one result inconclusive and the other result that excluded appellant and Cox. From the old farmhouse, Bollinger collected a copper tube that thieves cut from the heater.

{¶17} The following day, Detective Bollinger interviewed Ben Curry and another person who identified some ATVs. After Bollinger spoke with Curry, Bollinger believed he had probable cause to request arrest warrants for Jenkins, Cox, and appellant. The following day, while Bollinger and Detective Lehman arrested appellant, they observed appellant's red Ford Ranger and the white truck with the tarp. At the time of appellant's arrest, detectives found in appellant's pockets a firearm, an SD card, multiple pocket knives, flashlights, lighters, some tools, "a number of keys," and a "baggie of * * * two grams of crystal meth." One key "turned the ignition to the old Ford tractor that is in this kind of open barn" at the Williamson property. Officers later determined that the SD card came from a trail camera that recorded deer and other wildlife, along with a person identified as Williamson's friend who

maintains the trail cameras.

{¶18} At this point, Detective Bollinger advised appellant of his *Miranda* rights and recorded two interviews.  Appellant "did not admit to going into or being at the Williamson property.  He did admit to riding on the - - seeing four-wheelers, I believe, riding in the side by side at the Green Dragon Farm with Greg Cox." Appellant also discussed stolen items found in his red Ford Ranger truck.  "He even stated in the interviews, he said, I'm willing to give it back to the people.  Things like that."  After the sheriff's department towed the red Ford Ranger and the white Nissan truck, officers learned that the Nissan had been stolen from Enterprise Rental Company in Ashland, Kentucky.  Bollinger soon obtained a search warrant and collected many items from the vehicles, including scanners from the white truck.

{¶19} Detectives Bollinger and Lehman later visited the Williamson property with a search warrant for the Ford Ranger and to try the various keys.  Bollinger asked Williamson and his daughter to identify the items in the Ford Ranger, including an 11-gallon air tank, two green trail cameras, a blue Kobalt backpack full of tools, a black and red bag with tools, a green backpack with Nikon binoculars, a spotting scope, other tools and camouflage items, a red box with Craftsman socket set, a camouflage jacket, an orange vest, a Hart 20-volt lithium flashlight, tractor serpentine belts, and trail cameras with SD cards.

{¶20} The State played for the jury appellant's interviews with Detective Bollinger. After Bollinger advised appellant of his *Miranda* rights, appellant stated that the red Ford Ranger belonged to his son, and that Cox did not steal the white truck because appellant had been present when Cox purchased it. At one point, appellant stated, "It was a mistake." When asked where he and Cox had taken the stolen items, appellant stated, "that's where I got out of it." Later, appellant again spoke with Detective Bollinger. Much of this conversation is "inaudible," but when asked if the "stuff" in appellant's truck was "in the truck or just in the barn," appellant replied, "Both." Appellant looked through items in the Ranger and stated that various items belonged to him, but "grease guns, these toolboxes," "that's stuff that I took from the barn." When asked about a bag with expensive binoculars, appellant stated, "That right there come from the barn." Appellant further admitted that the range finder and camouflage jacket also came from the barn and, when asked what happened to the four-wheelers and side-by-side, appellant stated, "I ain't got a clue."

{¶21} Ohio Bureau of Criminal Investigation Analyst Pamela Farley tested the substance removed from appellant's pockets and confirmed that the bag contained .80 grams, plus or minus .05 grams, of methamphetamine.

{¶22} At the close of the State's case, appellant made a Crim.R. 29 motion for judgment of acquittal and asserted that (1)

the date of the possession of methamphetamine did not match the date in the indictment, and (2) the State presented no direct evidence that appellant entered the property in question. At that point, the trial court permitted the State to amend the indictment, but otherwise overruled the motion.

{¶23} In his defense, appellant called Mark Blackburn who testified that he knew appellant and that he owns a tractor with a universal key. Blackburn acknowledged, however, that other tractors are different. In addition, Blackburn's wife, Kelly, testified that Detective Bollinger visited their home on April 27 and sought her husband to "look for [ATVs] or something that were supposedly on my property." Kelly clarified that Bollinger sought four-wheelers and a side-by-side.

{¶24} After hearing the evidence, counsels' arguments and the trial court's jury instructions, the jury found appellant guilty of (1) burglary in violation of R.C. 2911.12(A)(2), a second-degree felony, (2) receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony, and (3) aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a fifth-degree felony.

{¶25} Subsequently, the trial court sentenced appellant to (1) serve an indefinite 6 to 9 year prison term on Count 1, burglary, (2) serve an 18-month prison term on Count 2, receiving stolen property, (3) serve a 12-month prison term on Count 3, possession

of drugs, (4) serve the prison terms in Counts 1, 2, and 3 concurrently for a total sentence of 6 to 9 years, (5) serve a mandatory 18-month to 3-year postrelease control term, and (6) pay costs.  After sentencing, appellant filed a renewed Crim.R. 29(C) motion for judgment of acquittal and a Crim.R. 33 motion for a new trial and the trial court overruled both motions.  This appeal followed.

## I.

{¶26} In his first assignment of error, appellant asserts the trial court erred when it failed to grant his Crim.R. 29(C) motion for judgment of acquittal concerning all charges.  Appellant maintains that the evidence adduced at trial does not support the trial court's determination that sufficient evidence supports his convictions for burglary, complicity to burglary, receiving stolen property, complicity to receiving stolen property, or aggravated possession of drugs.

{¶27} A motion for judgment of acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence.  *State v. Brinkley*, 2005-Ohio-1507, ¶ 39, *State v. McMurray*, 2015-Ohio-2827, ¶ 37 (12th Dist.).  The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *State v. Tenace*, 2006-Ohio-2417, ¶ 37, *State v. Johnson*, 2016-Ohio-867, ¶ 9 (4th Dist.), *State v. Conley*, 2014-Ohio-1699, ¶ 14 (12th Dist.),

citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995); *State v. Hernandez*, 2009-Ohio-5128, ¶ 6 (10th Dist.).

**{¶28}** Whether sufficient evidence exists to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). In making that determination, an appellate court will not weigh evidence or assess the witnesses credibility. *State v. Walker*, 55 Ohio St.2d 208, 212 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Therefore, a court must conduct "a review of the elements of the charged offense and a review of the state's evidence." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.), citing *State v. Williams*, 2011-Ohio-6267, ¶ 25 (1st Dist.); *State v. Bennett*, 2019-Ohio-4937, ¶ 46 (3d Dist.); *State v. Wells,* 2022-Ohio-3793, ¶ 32 (4th Dist.).

*Burglary*

**{¶29}** In the case sub judice, the jury determined that

appellant violated R.C. 2911.12, which provides:

> (A) No person, by force, stealth, or deception, shall do
> any of the following:
>
> (2) Trespass in an occupied structure or in a separately
> secured or separately occupied portion of an occupied
> structure that is a permanent or temporary habitation of
> any person when any person other than an accomplice of the
> offender is present or likely to be present, with purpose
> to commit in the habitation any criminal offense.

**{¶30}** In addition to instructing the jury regarding the

elements of burglary, the trial court charged the jury that "a

person who is complicit with another in the commission of a

criminal offense is regarded as guilty as if he personally

performed every act constituting the offense."

**{¶31}** Appellant contends that no direct evidence exists to

prove that appellant trespassed on the victim's property, much less

in an occupied structure.  Although we recognize that the evidence

that connects appellant to the offenses is largely circumstantial,

it is well-established that "a defendant may be convicted solely on

the basis of circumstantial evidence."  *State v. Wickersham*, 2015-

Ohio-2756, ¶ 39 (4th Dist.), quoting *State v. Nicely*, 39 Ohio St.3d

147, 151 (1988).  Circumstantial evidence and direct evidence

inherently possess the same probative value.  *State v. Jenks*, 61

Ohio St.3d 259 (1991), paragraph one of the syllabus.

"Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *' " *Nicely*, 39 Ohio St.3d at 150, quoting Black's Law Dictionary (5th Ed.1979) 221.

**{¶32}** Although appellant argues that no direct evidence exists to prove that he trespassed on the victim's property, as appellee points out Homer Jenkins testified that Greg Cox arrived at his house on a four-wheeler on the night in question, parked the four-wheeler in Jenkins' barn and asked Jenkins for a ride to Cox's truck. When Jenkins dropped off Cox at the Williamson property, Jenkins observed Cox's truck "parked back behind their house," and Jenkins "knew it wasn't right." Jenkins further testified that he observed appellant "standing in the road waiting for Greg." Jenkins also observed Cox and appellant walk toward the Williamson house together. Moreover, Jenkins testified that he, appellant and Cox drove around Jenkins' property to look for a stolen ATV. When Cox and appellant returned to Jenkins' barn that night, Jenkins knew they had been to the Williamson property. Appellant also acknowledged to Detective Bollinger that items in his truck did not belong to him, items that Drew Williamson and Debbie Wise identified as stolen. Moreover, at the time of his arrest appellant's pockets contained, among other items, keys from the

Williamson property and an SD card from a trail camera on the Williamson property. Finally, as the State points out, Ben Curry identified the ATVs and the side-by-side that he observed in Homer Jenkins' barn as the vehicles he observed on Debbie Wise's Facebook post regarding the stolen items. Curry further observed appellant and Greg Cox ride the side-by-side at the Jenkins property.

**{¶33}** After we view the evidence set forth above in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found all of the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, syllabus paragraph two. The jury, as the trier of fact, could draw inferences and make conclusions based upon the evidence adduced at trial. Our review of the record reveals that the evidence adduced at trial is sufficient to support the claim that appellant committed the crime of burglary because the evidence, if believed, would convince the average mind of appellant's guilt beyond a reasonable doubt.

*Receiving Stolen Property*

**{¶34}** The jury also determined that appellant violated R.C. 2913.51(A), which provides: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Appellant contends that no testimony proved that appellant exhibited dominion or control over any item listed

in the indictment (red Honda four-wheeler, green Honda four-wheeler, camouflage Polaris side-by-side) or that he received, retained, or disposed of any of the three items.

{¶35} "Possession" is generally defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Gavin*, 2015-Ohio-2996, ¶ 35 (4th Dist.), quoting *State v. Moon*, 2009-Ohio-4830, ¶ 19 (4th Dist.). While actual possession exists when circumstances indicate that an individual has or had an item within his immediate physical possession, *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. *Gavin, supra*, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *State v. Meddock*, 2017-Ohio-4414, ¶ 56 (4th Dist.), citing *Gavin, supra*; *Hankerson* at 91. Both dominion and control, and whether a person is conscious of an object's presence, may be established through circumstantial evidence. *Gavin, supra*; *State v. Brown*, 2009-Ohio-5390, ¶ 19 (4th Dist.).

{¶36} Appellant maintains that the only direct evidence adduced at trial is witness testimony that appellant rode, not drove, a side-by-side of an unknown make and model, on Homer Jenkins' property, who had already pleaded guilty to this same burglary. However, both the direct and circumstantial evidence adduced at trial did establish appellant's involvement in the criminal enterprise. Drew Williamson and Debbie Wise testified regarding the three ATVs and the side-by-side stolen from their property. Homer Jenkins testified that he drove Greg Cox to the entrance to the Williamson property, found appellant standing in the road in front of the property, watched Cox and appellant walk toward one of the Williamson houses, and observed Cox's truck parked behind the Williamson house. In addition, Ben Curry testified that he observed two red and one green ATV parked at Homer Jenkins' farm that appeared to match the three ATVs Debbie Wise posted on Facebook. Curry also testified that he observed appellant exit the Jenkins barn on a camouflage side-by-side that matched the stolen side-by-side in Debbie Wise's Facebook post.

{¶37} Once again, after our review of the evidence adduced at trial, we believe sufficient evidence exists to support the claim that appellant committed the offense of receiving stolen property. Here, the evidence, when viewed in a light most favorable to the prosecution, would convince the average mind of appellant's guilt beyond a reasonable doubt. After viewing this evidence, we believe

that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, syllabus paragraph two. Once again, it is well-established that a defendant may be convicted of a crime solely on the basis of circumstantial evidence. *Wickersham, supra.*

{¶38} Therefore, we conclude that sufficient evidence supports appellant's conviction for receiving stolen property.

*Possession of Drugs*

{¶39} Finally, the jury found appellant guilty of a violation of R.C. 2925.11(A), which provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Appellant contends that because the State did not at trial formally qualify Ohio Bureau of Criminal Investigation (BCI) Technician Pamela Farley as an expert, she could not state to a reasonable degree of scientific certainty that the substance tested is methamphetamine notwithstanding (1) Farley's R.C. 2951.51(A) notarized statement and laboratory report concerning the controlled substance at issue and (2) Farley's in court testimony that the substance tested is methamphetamine. In his brief, appellant frames the issue as follows:

> The Plaintiff-Appellant concedes it failed to move to qualify the BCI&I technician as an expert. It likewise concedes it listed both the report and the technician as evidence it would use at trial in its discovery. Finally, it concedes it did use both the report and the technician's testimony at trial to attempt to prove an essential element of the charge of aggravated possession of drugs. The only

> question, then, is whether it waived the use of R.C. 2925.51 by doing so.  If it did then the case is without sufficient evidence Defendant-Appellant possessed methamphetamine as whether State's Exhibit 42, is or is not as claimed, methamphetamine, is beyond the common experience and knowledge of juries and expert testimony in some form is required. *Maupin, supra.*

Thus, appellant asserts, the trial court abused its discretion when it admitted into evidence Farley's conclusions.

**{¶40}** In general, a trial court has broad discretion regarding the admissibility of expert testimony; thus, a reviewing court should not disturb such an admissibility decision absent an abuse of discretion.  *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 616 (1998), citing *Calderon v. Sharkey*, 70 Ohio St.2d 218 (1982). Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion.  *State v. Williams*, 4 Ohio St.3d 53, 58 (1983).  The term "abuse of discretion" connotes more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Prod., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122 (1991).  When applying the abuse-of-discretion standard of review, appellate courts are not free to merely substitute our judgment for that of the trial court.  *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-38 (1991), citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶41} Evid.R. 702, which governs the admissibility of expert testimony, states: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information."  Evid.R. 702.  The proponent of the testimony bears the burden of establishing the witness's qualification.

{¶42} "The Sixth Amendment's Confrontation Clause provides, 'In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *State v. Detienne*, 2017-Ohio-9105, ¶ 17 (4th Dist.), quoting *State v. Maxwell*, 2014-Ohio-1019, ¶ 34.  The Confrontation Clause of the Sixth Amendment is made applicable to the states by the Fourteenth Amendment.  *State v. Issa*, 93 Ohio St.3d 49, fn. 4 (2001). Consequently, this constitutional right applies to both federal and state prosecutions, but the right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.  *State v. Arnold*, 2010-Ohio-2742, ¶ 12.

{¶43} " 'The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.' " *Detienne*, *supra*, at ¶ 23, quoting *Maxwell* at ¶ 34, citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *accord State v. Smith*, 2021-Ohio-2866 (4th Dist.). However, " '[i]t is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived.' " *Detienne, supra*, at ¶ 24, quoting *State v. Pasqualone*, 2009-Ohio-315, ¶ 14, citing *Brookhart v. Janis*, 384 U.S. 1, 4 (1966); *Hawkins v. Hannigan*, 185 F.3d 1146, 1154 (10th Cir. 1999). (Internal citations omitted). For example, in Ohio a defendant may waive the right to cross-examine a laboratory analyst by failing to comply with a notice-and-demand statute. *See Detienne*, *supra*, at ¶ 25. " '[N]otice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use [a laboratory] analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial.' " *Detienne, supra*, quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 326 (2009).

**{¶44}** R.C. 2925.51 is the most frequently relied upon notice-and-demand statute. *See Detienne*, *supra*, at ¶ 26. Under R.C. 2925.51(A), in any criminal prosecution for a violation of Chapters 2925 ("Drug Offenses") or 3719 ("Controlled Substances"), a qualifying laboratory report stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance, and that it contains any amount of a controlled substance and the number and description of unit dosages, is admissible at trial as prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance so long as the prosecuting attorney serves a copy of the report on the accused beforehand. However, "[t]he report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report." R.C. 2925.51(C). (Emphasis added.)

**{¶45}** "In *Pasqualone*, the Ohio Supreme Court held that 'the procedures of R.C. 2925.51 adequately protect an accused's right to confrontation, so that an accused who fails to demand the testimony of the analyst pursuant to R.C. 2925.51(C) validly waives his

opportunity to cross-examine the analyst.' " *Detienne, supra*, at ¶ 27, quoting, *Pasqualone*, 2009-Ohio-315, at ¶ 44. In other words, "When the state has complied with its obligations under R.C. 2925.51, a defendant's failure to use the procedures of R.C. 2925.51(C) to demand that a laboratory analyst testify constitutes a waiver of the opportunity to cross-examine the analyst at trial and allows the analyst's report to be admitted as prima facie evidence of the test results." *Id.*, at paragraph two of the syllabus.

{¶46} In the case sub judice, Farley, a forensic scientist, previously submitted her notarized statement and laboratory report covering the substance involved in the case sub judice, and has worked at Ohio Bureau of Criminal Identification and Investigation (BCI) since 2018. Prior to that, Farley worked in the drug chemistry section of the Ohio State Highway Patrol's crime laboratory. Farley's educational qualifications include a bachelor of science in forensic science from Defiance College in 2008, and Farley had testified previously in the Lawrence County Common Pleas Court. Farley testified to the identification and weight of the substance found in appellant's pocket.

{¶47} Although the State did not formally tender Farley as an expert, appellant's counsel did not object to, or challenge her, qualifications, nor did counsel object when the trial court

admitted Farley's lab reports into evidence.[3]  Furthermore,

_____

[3] In *United States v. Johnson*, 488 F.3d 690 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit expressed a preference for trial courts not to designate or certify an expert in the jury's presence because it can lend a note of approval to the witness that inordinately enhances the witness's stature and detracts from the court's neutrality and detachment.  *Id.* at 697. However, in *State v. Williams,* 2018-Ohio-1647 (2d Dist.), the Second District found the portion of *Johnson* that described the preferred approach for tendering expert witnesses to be dicta and disagreed with the idea that numerous courts in Ohio had adopted that approach.  *Id.* at ¶ 14-15.   In addition, the Second District held:

> The custom of tendering a witness as an expert, which by some has been taught as accepted practice, is not without reason.  Since 2001 the Ohio Supreme Court has no less than eight times held that the proponent of an expert does not have to formally tender an otherwise-qualified expert witness. But those rulings exist for the very reason that appellants have raised the specter of error precisely because the prosecution did not formally tender a witness as an expert. We also recently considered an argument that ten expert witnesses were not qualified as experts, in part, because they were not formally tendered as experts. *State v. Hayes*, 2d Dist. Montgomery No. 26379, 2016-Ohio-7241 [2016 WL 5888103], ¶¶ 113-124. In addition, once prospective qualifications to render opinions are presented, it makes sense to signal that the qualification portion of the testimony is complete to give the opponent the opportunity to request voir dire of the witness on those qualifications before proceeding with their opinions and to allow the trial court, and the witnesses' proponent, to determine whether the witnesses' opinions will be admissible. The issue, as we perceive it, is more directly related to how a trial court responds to a tender of a witness as an expert.
> (Emphasis added.) *Id.* at ¶ 13.

*See also State v. Hartman*, 2001-Ohio-1580 (State did not formally tender witness as an expert. However, the trial judge found that witness was "certainly qualified as an expert."); *State v. Davis,* 2008-Ohio-2 (State's failure to formally tender police detective as

pursuant to R.C. 2925.51, a BCI lab report signed by the person who performed the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, constitutes prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance.  R.C. 2925.51(A).  Moreover, Farley testified in detail at trial about the laboratory's inventory process, chain of custody procedures, and the analytical testing methodology.  Appellant's trial counsel also cross-examined Farley.  Consequently, in light of the foregoing, we believe appellant waived all but plain error.  Crim.R. 52(B); *State v. Baston*, 85 Ohio St.3d 418, 423 (1999).

{¶48} After our review in the case at bar, we find no error, let alone plain error.  We believe Farley's qualifications and experience as a forensic scientist qualified her to offer her opinion about the identification and weight of the methamphetamine.  This is, in all likelihood, the reason appellant's trial counsel did not challenge the witnesses' qualifications.  Therefore, after our review of the record we believe that the evidence adduced at

---

expert witness on fingerprints, blood spatter, and trace evidence was not plain error in capital murder prosecution, as detective was qualified to testify as an expert.)

trial is sufficient to support the claim that appellant possessed methamphetamine.

**{¶49}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶50}** In his second assignment of error, appellant asserts that the trial court abused its discretion when it denied his motion for new trial.

**{¶51}** "Generally, a decision on a motion for a new trial is within the discretion of the trial court." *State v. Lusher*, 2012-Ohio-5526, ¶ 25 (4th Dist.), citing *State v. Ward*, 2007-Ohio-2531, ¶ 41 (4th Dist.) , citing *State v. Schiebel*, 55 Ohio St.3d 71, paragraph one of the syllabus (1990). Accordingly, we will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *State v. Nichols*, 2012-Ohio-1608, ¶ 61 (4th Dist.). In general, an abuse of discretion implies that the trial court's judgment is arbitrary, unreasonable or unconscionable. *State v. Minton*, 2016-Ohio-5427, ¶ 19 (4th Dist.), *State v. Slagle,* 2015-Ohio-1503, ¶ 6 (4th Dist.).

Crim.R. 33(A) provides:

(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:

(1) Irregularity in the proceedings, or in any order or

ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) That the verdict is contrary to law;

(5) Error of law occurring at the trial;

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶52} Appellant contends that the trial court should not have played the entire two recorded statements for the jury because some of the recorded statement contains Evid. R. 404(b) evidence. In particular, appellant argues that his receiving stolen property charge involved the ATVs and a side-by-side, but the recording mentioned many other items found in the Jenkins' barn.

{¶53} Evid.R. 404(b) prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Specifically, pursuant

to Evid.R. 404(B)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Other-acts evidence may, however, be admissible for another non-character-based purpose, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, 2020-Ohio-4440, ¶ 22; *State v. Smith,* 2020-Ohio-4441, ¶ 36.

**{¶54}** Courts generally use a three-step analysis to determine whether evidence of other crimes, wrongs, or acts of an accused may be admissible. *See State v. Ludwick*, 2022-Ohio-2609 (4th Dist.) at ¶ 17; *State v. Williams*, 2012-Ohio-5695, ¶ 19. The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403. *Williams* at ¶ 20; *State v. Stevens,* 2023-Ohio-3280

(4th Dist.), ¶ 125.

Thus, the admissibility of other-acts evidence under Evid.R. 404(B) is a question of law that we review de novo. *See Ludwick*, at ¶18; *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22 ("because '[d]etermining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard' of review" (brackets and emphasis sic)). "Weighing the probative value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis. Balancing the risks and benefits of the evidence necessarily involves an exercise of judgment; thus, the trial court's determination should be reviewed for an abuse of discretion." *Id.* at ¶ 30. Thus, we conduct a de novo review of the first two steps of the analysis (i.e., is the evidence relevant and is it presented for a legitimate purpose) and we conduct an abuse of discretion review of whether the probative value of it outweighs the danger of unfair prejudice. *State v. Lotzer*, 3d Dist. Allen No. 1-20-30, 2021-Ohio-3701, 2021 WL 4824579, ¶ 8 ("the first two steps (i.e., relevancy under Evid.R. 401 and Evid.R. 402 and the particular purpose the evidence is offered under Evid.R. 404(B)) are intertwined and pose legal questions, and thus, are reviewed under a de novo standard *657 of review. * * * However, the third step (i.e., Evid.R. 403's balancing tests) 'constitutes a judgment call,' which we review under an abuse-of-discretion standard").

*Stevens* at ¶ 126.

{¶55} As we observed in *Stevens,* in *State v. Smith*, 2020-Ohio-4441, the Supreme Court of Ohio noted that courts should first evaluate whether the evidence is relevant to a non-character-based issue material to the case. "If the evidence is not premised on improper character inferences and is probative of an issue in the case, the court must then consider whether the evidence's value 'is substantially outweighed by the danger of unfair prejudice, of

confusion of the issues, or of misleading the jury.' " *Id.* at 128,

citing *Smith* at ¶ 37, quoting Evid.R. 403(A); *State v. Hartman*,

2020-Ohio-4440.

**{¶56}** Importantly, the Supreme Court of Ohio has held,

" * * * (E)vidence of other crimes may be presented when
'they are so blended or connected with the one on trial as
that proof of one incidentally involves the other; or
explains the circumstances thereof; or tends logically to
prove any element of the crime charged.' " (Citation
omitted.) *United States v. Turner* (C.A.7, 1970), 423 F.2d
481, at 483-84, certiorari denied 398 U.S. 967, 90 S.Ct.
2183, 26 L.Ed.2d 552. *Accord United States v. Calvert*,
(C.A.8, 1975), 523 F.2d 895, 907 certiorari denied, 424
U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314; *State v.
Villavicencio* (1964), 95 Ariz. 199, 388 P.2d 245. *See also*,
1 Wharton's Criminal Evidence (13 Ed.) 547, Section *318
242; 22 Wright & Graham, Federal Practice and Procedure
(1978 Ed.), 441, Section 5239.

*State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980).

**{¶57}** In the case sub judice, counsel argued at trial, "they're

introducing evidence of crimes he's not charged with; i.e.,

receiving stolen property of binoculars, camera, camouflage

equipment, things like that. I think they would have had to

provide reasonable notice in writing in advance of the trial and

had to be articulated in the notice for the permitted purpose of

which they were going to intend to introduce it and the reasons

supporting that." The trial court, however, determined that the

State adduced the evidence in question to prove the crime of

burglary. Specifically, the trial court found no other acts

evidence, but instead identified the items as evidence of burglary

because the items found in the barn matched the items taken from the Williamson property.  We agree.

{¶58} Here, appellee argues, appellee adduced evidence of theft from the residence to prove the elements of the burglary charge, not as other acts evidence pursuant to Evid.R. 404(B).  Similarly, in *State v. Stevens, supra,* the defendant cited examples of alleged "other acts evidence" admitted at his trial via a recorded statement.  These instances involved, inter alia, a discussion about other stolen items.  This court concluded that the trial court did not err when it admitted evidence of discussion of other stolen items.  *Id.* at ¶ 135.

{¶59} In the case sub judice, the evidence in question, various items of property stolen during the commission of the offenses, concerned the burglary element related to the appellant's *purpose* to commit a criminal offense in the occupied structure, i.e., theft.  Rather than other acts evidence, we believe the evidence constitutes relevant direct evidence of the crimes charged. Evidence is admissible when "the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime."  *State v. Thompson*, 66 Ohio St.2d 496, 498, (1981); accord *State v. Grate*, 2020-Ohio-5584, ¶ 140.  Further, evidence regarding other acts "may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or

explains the circumstances thereof; or tends logically to prove any element of the crime charged.' " *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980), quoting *United States v. Turner*, 423 F.2d 481, 483-84 (C.A. 7, 1970).

**{¶60}** Consequently, in the case sub judice, we believe that the reference to all of the stolen property placed the property in appellant's possession and helped to explain the sequence of events that led to the discovery and recovery of the property and its connection to appellant. *State v. Gross,* 2002-Ohio-5524, ¶ 47 (testimony about details of a drug transaction placed the murder weapon in defendant's possession, explained the sequence of events leading to its recovery and connection to defendant, and demonstrated defendant's concern about discovery of the weapon.) *See also State v. Sims*, 2023-Ohio-1179, ¶ 98 (in rape trial evidence of appellant's other contemporaneous acts relevant to establish appellant's intent evidence constituted an integral component to help to explain the sequence of events and necessary to provide the trier of fact with a complete picture of the crime). Here, the items mentioned during the interviews and during the course of trial included a portion of the chattel property stolen during the commission of the named offenses, not some unrelated event prior in time or property acquired from a different location. Therefore, we conclude that the trial court did not abuse its discretion when it denied appellant's motion for new trial.

{¶61} Accordingly, for the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
            Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.